IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Phillip Miller,                                                              Case No. 3:07CV3180

        Plaintiff,

v.                                                                   ORDER

TMT Logistics, Inc.,

        Defendant

       This is an employment discrimination case by a terminated employee against his former employer. Plaintiff, Phillip Miller, asserts that Defendant, TMT Logistics, Inc., fired him in violation of O.R.C. § 4123.90 in retaliation for his having filing a workers' compensation claim. Defendant denies the allegations and claims Plaintiff cannot set forth a *prima facie* case or meet his burden of proof as to the pretext component.

       Plaintiff's complaint originally included several claims, in which jurisdiction was proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Supplemental jurisdiction over Plaintiff's remaining state law claim is proper under 28 U.S.C. § 1367.

Pending is Defendant's motion for summary judgment under Fed. R. Civ. P. Rule 56 [Doc. 19]. For the following reasons, Defendant's motion for summary judgment shall be granted.

**Background**

TMT Logistics, Inc., a transportation company located in Napoleon, Ohio, hired Plaintiff Phillip Miller on June 21, 2006, as a shuttle driver to transport local freight to and from TMT's facility in Napoleon. Plaintiff filed a workers' compensation claim on January 30, 2007, and missed three weeks of work. He returned to work at TMT on February 21, 2007, in a transitional work program and continued to receive physical therapy treatments conducted on TMT's premises.

On April 25, 2007, approximately three months after Plaintiff filed his workers' compensation claim, TMT dispatched Plaintiff from Napoleon to Graham Packaging in Findlay, Ohio, to deliver a loaded TMT trailer. Plaintiff arrived at Graham Packaging and proceeded to back the trailer into one of the truck docks. After securing the trailer, Graham Packaging employees told Plaintiff that it would take them roughly one hour to unload and reload the trailer. Despite TMT's instructions to Plaintiff to stay with the trailer until it was unloaded, Plaintiff unhooked the TMT tractor from the trailer and drove it away from Graham Packaging's premises, leaving the TMT trailer.

When he left the premises, Plaintiff drove TMT's tractor approximately five miles to the Easter Tire building in Findlay, the location of a TMT competitor, Fleetmaster. The parties dispute why Plaintiff stopped. Plaintiff contends that he went to the facility to use the restroom and ended up learning about a potential employment opportunity when he ran into one of his colleagues. According to TMT, Plaintiff stopped at Fleetmaster to inquire about the job. Regardless, it is undisputed that Plaintiff left the TMT trailer to attend to personal business. After he left Fleetmaster,

Plaintiff stopped at a convenience store, and then drove the TMT tractor back to Graham Packaging. According to Plaintiff, the entire trip took him approximately 40 to 50 minutes.

On April 25, 2007, Mike Beavers, one of Plaintiff's co-workers, informed Ken Major, TMT's then Vice President of Transportation, that he saw Plaintiff's TMT tractor parked outside Fleetmaster's location. The following day, April 26, 2007, Major questioned Plaintiff about his activities the day before. Carrie Sprenger, TMT's Vice President of Marketing and Human Resources, was also present when Major questioned Plaintiff. Major asked Plaintiff whether he indeed left Graham Packaging while TMT's trailer was being unloaded and drove TMT's tractor to another trucking company in Findlay. In response, Plaintiff admitted that after he arrived at Graham Packaging on the day in question, unhooked the TMT tractor from the trailer, and drove it to Fleetmaster.

TMT concluded that by unhooking the TMT trailer and driving the tractor to another location, regardless of the purpose, Plaintiff violated company expectations and misused company equipment. After meeting with Plaintiff on April 26, 2007, Major discussed the matter with Sprenger and Tony Marks, TMT's president. Major recommended terminating Plaintiff's employment because of his actions on April 25, 2007; Sprenger and Marks agreed. Major thereafter informed Plaintiff that his employment was terminated because of his actions on April 25, 2007.

On October 16, 2007, Miller brought this suit alleging: 1) violation of COBRA rights; 2) retaliation under O.R.C. § 4123.90; 3) wrongful discharge in violation of public policy under O.R.C. § 4123.90; 4) wrongful discharge in violation of public policy under O.R.C. § 4113.52, et seq.; 5) age discrimination in promotion; and 6) intentional infliction of emotional distress. On January 30,

3

2009, Defendant moved for summary judgment, and in response Plaintiff withdrew all claims, except the retaliation claim presently at issue.

## Standard of Review

I must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the record's portions demonstrating the absence of a genuine issue of material fact. *Id.* at 323. The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party cannot rest on its pleadings or merely reassert its previous allegations; rather, the nonmovant must show that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of concrete evidentiary material in support of his position. *Celotex, supra,* 477 U.S. at 324.

In deciding the motion for summary judgment, I will accept the evidence of the nonmoving party as true, resolve all doubts against the nonmoving party, construe all evidence in the light most favorable to the nonmoving party, and draw all inference in the nonmoving party's favor. *Eastman Kodak Co. v. Image Technical Services*, 504 U.S. 451, 456 (1992). I shall rule in favor of summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show no genuine issue of material fact exists and the law entitles the movant to summary judgment.

**Discussion**

Generally, Courts analyze employment discrimination claims unsupported by direct evidence under the three-step, burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). Under this test, Miller must first establish a *prima facie* case. *See id.* If he does so, the burden shifts to TMT to articulate a legitimate, non-discriminatory reason for its action. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003). If the employer does so, the burden shifts back to the employee to show that the employer's articulated reason is merely a pretext to conceal an unlawful motivation. *See id.*

**1. *Prima Facie* Case**

In this case, Plaintiff cannot establish a *prima facie* case. To establish a *prima facie* case of retaliatory discharge under O.R.C. § 4123.90, Plaintiff must show that "1) []he was injured on the job, 2) []he filed a worker's compensation claim, and 3) there was a causal connection between [his] filing of the workers' compensation claim and his termination." *Cunningham v. Kroger Co.*, 2006 WL 3230323, at *2 (Ohio Ct. App.). Although Miller engaged in protected activity when he filed his workers' compensation claim and suffered an adverse employment action (i.e. termination), he has not sufficiently shown a causal connection between the two events.

**A. Causation and Temporal Proximity**

Plaintiff may show causation with "any persuasive evidence of a retaliatory intent and by a direct or an indirect method of proof." *Buehler v. Ampam Commercial Midwest*, 2007 WL 2683520, at *5 (Ohio Ct. App.). When relying on indirect evidence, Plaintiff may rely on a combination of a "variety of factors," including timing, to infer causation. *See id.*

5

In this case, Plaintiff maintains that he satisfied the causation element based solely on the temporal relationship between the filing of the workers' compensation claim on January 30, 2007, and his termination from TMT about three months later on April 26, 2007. Although many factors may contribute to an inference of causation, Ohio courts have consistently interpreted O.R.C. § 4123.90 to require more than just temporal proximity. *McDermott v. Continental Airlines, Inc.*, 2008 WL 1766892, at *5 (S. D. Ohio) ("temporal proximity alone is insufficient to support a causal connection."); *Buehler, supra,* 2007 WL 2683520, at *5 ("While the timing of the termination can contribute to an inference of retaliation, temporal proximity alone is insufficient to support a finding of a causal connection."); *Cunningham, supra,* 2006 WL 323032, at *3 (holding "temporal proximity alone does not show the required causal connection.").

Plaintiff references several other retaliatory discharge cases that have indicated temporal proximity may sometimes be sufficient to support an inference of causation in employment discrimination cases. These cases, however, are all distinguishable from the present case because they do not involve interpretation of Ohio law. In *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 563 (6th Cir. 2004), for example, the Sixth Circuit stated that temporal proximity alone sufficed to infer causation in a Title VII retaliation claim. But in this cases decisions interpreting O.R.C. § 4123.90 control: as stated, Ohio have consistently held that temporal proximity, without more, cannot establish causation.

Plaintiff cannot, therefore, establish the causation element of his *prima facie* case.

### 2. Legitimate, Non-Discriminatory Reason

Even if Plaintiff could establish a *prima facie* case under O.R.C. § 4123.90, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for its action. *See Wexler, supra*, 317 F.3d at 574. *Cunningham, supra,* 2006 WL 323032, at *3. Ohio courts have also emphasized that, "[w]hen considering whether an employer has a legitimate non-discriminatory reason for discharging an employee, the court must keep in mind the fact that an employee who files a workers' compensation claim is not insulated from discharge."*Markham v. Earle M. Jorgensen Co.*, 138 Ohio App.3d 484, 492 (2000). "The scope of the cause of action created by [O.R.C. § 4123.90] is very limited, and the burden of proof is upon the employee to specifically show that the termination was in direct response to the filing of a claim." *Metheney v. Sajar Plastics, Inc.*, 69 Ohio App.3d 428, 432 (1990).

In this case, the employer has stated a legitimate, nondiscriminatory reason: Plaintiff's failure leaving the trailer and driving away on what the employer perceived as a personal and unauthorized errand. Do so, plaintiff failed to comply with company policy regarding supervision and use of company property.

The defendant can meet its burden of producing a legitimate, non-retaliatory reason for its actions.

### 3. Pretext

Once Defendant articulates a legitimate, non-discriminatory reason for its action, the burden shifts back to Plaintiff to show that there is a legitimate dispute of material fact which, if found in his favor, would satisfy a rational jury that the company's that the employer's articulated reasons are not its true reasons were not its true reasons, but are offered simply as a pretext to mask unlawful intent. *See, e.g., Wexler, supra*, 317 F.3d at 574; *Cunningham, supra,* 2006 WL 323032, at *3. Even

7

if Plaintiff had established his *prima facie* case, which he did not, he cannot meet his burden of proving that pretext underlies TMT's stated reason for terminating Plaintiff's employment.

First, Plaintiff contends that TMT's stated reason is "unworthy of credence" because of a putative inconsistency in an interrogatory answer. Plaintiff contends that because Defendant failed to provide materials requested in an interrogatory, but later testified to their existence and admitted the mistake, shows inconsistency in TMT's actions.

This mistake, however, is neither dispositive, nor even relevant to the issue at hand. It was related to an misinterpretation of the scope of the interrogatory; and, other discovery responses provided the information that the interrogatory sought. Moreover, this mistake alone does not remotely lead to an inference that TMT's stated reason for terminating Plaintiff's employment is not credible.

Second, Plaintiff points to the increase in workers' compensation premiums in the years leading up to Plaintiff's termination as evidence of retaliation. TMT asserts that business growth caused the increase, but Plaintiff claims TMT belied its explanation in a document referring to a layoff based on slow business during the same time period. Plaintiff, therefore, attempts to assert that TMT's position on the increase in premiums is inconsistent. This contention, however, does not trigger a reasonable inference that TMT's stated reason for terminating Plaintiff's employment is a pretext for workers' compensation retaliation.

Additionally, Plaintiff ignores the evidence presented by TMT of the fact that several other employees filed workers' compensation claims without losing their jobs. Ohio courts have ruled that evidence of other employees who filed workers' compensation claims without resulting adverse

employment action presents appropriate grounds for granting summary judgment in favor of the employer. *See Rollison v. Ball*, 2006 WL 2795597, at *5 (Ohio Ct. App.).

Finally, Plaintiff contends that an interpretation of company rules by a fellow TMT employee may suggest that Miller's conduct did not technically violate written company rules. This fact is also irrelevant to whether the stated reason for the firing was a pretext to conceal retaliatory motive. Plaintiff claims that this statement by a fellow employee regarding the rules demonstrates a "credibility problem" with Defendant, yet Plaintiff does not actually contest the validity of the work rule or present any evidence suggesting his action on April 25, 2007, was acceptable work behavior, and thus inappropriate grounds for termination. On the contrary, this statement cannot overcome the undisputed evidence regarding the events on April 25, 2007, as well as Defendant's evidence regarding workers' compensation claims filed by TMT employees.

Plaintiff, therefore, cannot establish pretext.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT Defendant's motion for summary judgment be, and the same hereby is granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge

9